IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION

| | |
|---|---|
| JONATHAN VOORHIS, ) | |
| ) | |
| Plaintiff ) | 1:23-CV-00090-RAL |
| ) | |
| vs. ) | RICHARD A. LANZILLO |
| ) | CHIEF UNITED STATES MAGISTRATE |
| PATRICK GINKEL, ) | JUDGE |
| ) | |
| Defendant ) | MEMORANDUM OPINION ON |
| ) | DEFENDANT'S MOTION TO DISMISS |
| ) | |
| ) | IN RE: ECF NO. 16 |
| ) | |

Defendant Patrick Ginkel has moved to dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 16. For the reasons discussed below, the motion will be GRANTED.[1]

I.   Background

Ginkel is a detective employed by the City of Erie Police Department. As part of his duties, he investigated a reported road rage incident involving Plaintiff Jonathan Voorhis ("Voorhis") and another driver, Laura Logue ("Logue"), that occurred in the City of Erie on October 21, 2021. Ginkel's investigation included a video recorded victim-witness interview of Logue and video recordings of the incident that were captured by surveillance cameras from two businesses in the area. *See* ECF Nos. 34-35 (videos). Following the investigation, on November 7, 2021, Ginkel filed a criminal complaint and affidavit of probable cause charging Voorhis with terroristic threats, stalking, and simple assault, which were approved by a Pennsylvania magisterial district judge.

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. §636(c).

ECF No. 5, p. 3; ECF No. 17-2 (criminal complaint and affidavit of probable cause) ECF No. 17-1, p. 2 (state court docket).  Prosecutors later amended the criminal complaint to drop the original three charges and add three counts of disorderly conduct, specifically, "Disorderly Conduct Engage In Fighting" ("fighting charge"), "Disorderly Conduct Obscene Language/Gesture" ("obscene language charge"), and "Disorderly Conduct Hazardous/Physi Off." ("physical offense charge").  ECF No. 17-1 p. 4.  The case proceeded to a nonjury trial on February 6, 2023, at the conclusion of which Voorhis was convicted of the fighting charge and the physical offense charge.  Voorhis was acquitted of the obscene language charge.  *Id.*, pp. 4-5.

Voorhis commenced this action on May 17, 2023.  His Complaint asserts claims of false arrest, false imprisonment, and malicious prosecution against Ginkel.  ECF No. 5, pp. 1, 16-17.  He alleges that Ginkel's affidavit of probable cause included "factually false statements and omitted exculpatory evidence intentionally or with reckless disregard for the truth." *Id.*  Ginkel has moved to dismiss the Complaint on the grounds that (1) Voorhis' conviction on the two disorderly conduct charges precludes his malicious prosecution claim; and (2) his false arrest, false imprisonment, and malicious prosecution claims fail because his arrest of Voorhis and his filing of charges against him were supported by probable cause.  ECF No. 16.  Voorhis has filed a memorandum in opposition to the motion (ECF No. 19), and Ginkel has filed a reply brief (ECF No. 20).  Ginkel's motion is ripe for decision.

II. Standard of Review

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint.  *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a Rule 12(b)(6) motion to dismiss, the court accepts as true the factual allegations of the complaint and views them in a light most favorable to the plaintiff.  *See U.S. Express Lines Ltd. v. Higgins*,

281 F.3d 383, 388 (3d Cir. 2002).  In making its determination under Rule 12(b)(6), the court is not opining on whether the plaintiff is likely to prevail on the merits; the plaintiff must only present factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (citing 5 C. Wright & A. Miller, Federal Practice, and Procedure § 1216, pp. 235-36 (3d ed. 2004)).  *See also Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  A complaint should only be dismissed under Rule 12(b)(6) if it fails to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570 (rejecting the traditional Rule 12(b)(6) standard established in *Conley v. Gibson*, 355 U.S. 41, 78 (1957)).  In assessing the legal sufficiency of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based on such exhibits. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

      While a complaint does not need detailed factual allegations to survive a motion to dismiss, it must provide more than labels and conclusions.  *See Twombly*, 550 U.S. at 555.  A "formulaic recitation of the elements of a cause of action will not do." *Id*. (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Moreover, a court need not accept inferences suggested by a plaintiff if they are unsupported by the facts alleged in the complaint. *See California Pub. Emp. Ret. Sys. v. The Chubb Corp.*, 394 F.3d 126, 143 (3d Cir. 2004) (citing *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997)).  Nor must the court accept legal conclusions disguised as factual allegations. *See Twombly*, 550 U.S. at 555; *McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 531 (3d Cir. 2009) ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

Because Voorhis is proceeding pro se, his Complaint will be held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520-521 (1972). If the court can reasonably read a *pro se* litigant's pleadings to state a valid claim upon which relief could be granted, it should do so despite the litigant's failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *See Boag v. MacDougall*, 454 U.S. 364 (1982); *United States ex rel. Montgomery v. Bierley*, 141 F.2d 552, 555 (3d Cir. 1969). Despite this leniency, however, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citing *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996)).

III.   Scope of the Record

Ginkel has attached several exhibits to his motion, including the state court docket and records showing the disposition of the criminal proceedings against Voorhis, and the affidavit of probable cause, and the criminal complaint against Voorhis. *See* ECF Nos. 17-1, 17-2. The district court may take judicial notice of the state court's disposition of the charges as it is integral to Voorhis' claims. The authenticity of the state court records is not disputed, they are a matter of public record, and they relate directly to essential elements of Voorhis' claims. Similarly, because Voorhis' claims are based in substantial part on Ginkel's affidavit of probable cause and the criminal complaint, these materials are properly considered by the Court in ruling on the motion to dismiss. *See Mayer*, 605 F.3d at 230. The same is true for the authentic recording of Logue's victim-witness statement and the video surveillance recordings.[2] *See Sledge v. Martin*, 2023 WL

---

[2] Ginkel relied on these videos when he prepared his affidavit of probable cause. *See, e.g.,* ECF No. 17-2, p. 6. Voorhis also referred to the video recordings in his Complaint. *See, e.g.*, ECF No. 5, p. 7 ("… as the video shows …")

4

2332464, at *3 (W.D. Pa. Mar. 2, 2023) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). Indeed, the Court of Appeals for the Third Circuit has held that, on a motion to dismiss, the district court must consider an available and authentic recording of the interview of an eyewitness identified in the complaint when evaluating whether probable cause existed for an arrest. *See Pinkney v. Meadville, Pennsylvania*, 2022 WL 1616972, at *3 (3d Cir. May 23, 2022). Accordingly, none of the exhibits filed with Ginkel's motion to dismiss requires the Court to convert the motion to a motion for summary judgment. *Heller v. Hammerle*, 2021 WL 3426807, at *3 (W.D. Pa. June 30, 2021), *report and recommendation adopted*, 2021 WL 3419678 (W.D. Pa. Aug. 5, 2021).

IV. Discussion and Analysis

    A. Voohris' conviction on two counts of disorderly conduct does not necessarily preclude his malicious prosecution claim.

"To prevail on a malicious prosecution claim, a plaintiff must demonstrate that: '(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in [the] plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.'" *Harvard v. Cesnalis*, 973 F.3d 190, 206 (3d Cir. 2020) (quoting *Est. of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003)). Relying on *Kossler v. Crisanti*, 564 F.3d 181, 188 (3d Cir. 2009), Ginkel argues that Voorhis' conviction on two disorderly conduct charges negates the second essential element of his malicious prosecution claim because a mixed verdict is not a favorable termination of the proceeding. *See* ECF No. 17, pp. 4-5. But in *Thompson v. Clark*, the Supreme Court abrogated *Kossler* to the extent that it held that a favorable termination requires "the plaintiff to show that the criminal prosecution ended with some affirmative indication of

innocence." *Thompson v. Clark*, 596 U.S. 36, 49 (2022). Instead, the "plaintiff need only show that *the criminal prosecution ended without a conviction.*" *Id.* (emphasis supplied). *Thompson* did not address, however, whether a proceeding can ever terminate in a plaintiff's favor when the prosecution did not end without a conviction on every charge. In *Alburg v. Jones,* the Court of Appeals for the Third Circuit observed that "*Kossler* left open the possibility that even when a plaintiff is convicted on one charge but not the other, a court may still hold that the criminal proceeding favorably terminated if the charged offenses 'contained distinct statutory requirements" and "aimed to punish two different sets of conduct.'" *Alburg v. Jones*, 2023 WL 2823895, at *3 (3d Cir. Apr. 7, 2023) (quoting *Kossler*, 564 F.3d at 191). This case is further complicated because the original charges filed by Ginkel against Voorhis were withdrawn and Voorhis was later tried on amended charges based on the same incident. The Court need not address the questions left unresolved by *Kossler* and *Thompson*, however, because the evidence before Ginkel establishes that he had probable cause to arrest and prosecute Voorhis on the original charges of terroristic threats, simple assault, and stalking. This negates not only Voorhis' malicious prosecution claim but his false arrest and false imprisonment claims as well.

    B. Voorhis' Fourth Amendment claims fail because his arrest and prosecution were supported by probable cause.

Voorhis' false arrest, false imprisonment, and malicious prosecution claims are grounded in the Fourth Amendment and asserted under 42 U.S.C. §1983. *See* ECF No. 5, p. 16 ("… plaintiff suffered deprivation of his liberty as a result of the defendant violating the plaintiff's fourth amendment rights."). The absence of probable cause is an essential element of each claim. *See Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020); *Pinkney v. Meadville, Pennsylvania*, 648 F. Supp. 3d 615, 633–34 (W.D. Pa. 2023), *aff'd*, 95 F.4th 743 (3d Cir. 2024). Voorhis' false arrest and false imprisonment claims fail if probable cause existed "as to any offense that could be

6

charged under the circumstances." *Barna v. City of Perth Amboy*, 42 F.3d 809, 819 (3d Cir. 1994) (citing *Edwards v. City of Philadelphia*, 860 F.2d 568, 575-76 (3d Cir. 1988)). The presence of probable cause for one charge, however, does not automatically defeat a Fourth Amendment malicious prosecution claim alleging the lack of probable cause for another charge. *See Chiaverini v. City of Napoleon*, -- U.S. --, 144 S. Ct. 1745, 1750-51 (2024); *see also Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007) (holding that a finding of "probable cause for the arrest of the plaintiff on any one charge" will not necessarily "insulate" a law enforcement officer from liability for malicious prosecution). Because the absence of probable cause as to any charge initiated by Ginkel will satisfy this element of Voorhis' malicious prosecution claim, the Court will examine on a charge-by-charge basis whether the facts and circumstances within Ginkel's knowledge were sufficient in themselves to warrant a reasonable belief that Voorhis committed each offense.

"[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. New Jersey State Police*, 71 F.3d 480, 483 (3d Cir. 1995). "Probable cause is assessed based upon the 'totality-of-the-circumstances' available to the arresting officer." *Pinkney v. Meadville, Pennsylvania*, 648 F. Supp. 3d 615, 634 (W.D. Pa. 2023), *aff'd*, 95 F.4th 743 (3d Cir. 2024) (citing *Harvard*, 973 F.3d at 200 (additional citation omitted). This assessment requires a practical, common-sense evaluation that avoids technicalities and considers the totality of the circumstances from the perspective of a reasonable and prudent person. *See Illinois v. Gates*, 462 U.S. 213, 230–31 (1983). Although the existence of probable cause in a §1983 action is typically a question of fact, "the district court may conclude in the appropriate case...that probable cause did exist as a matter of

law if the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *See Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997).

Ginkel charged Voorhis with three state law offenses: (1) terroristic threats with the intent to terrorize another, (2) stalking, and (3) simple assault. Under Pennsylvania law, a person commits the offense of "terroristic threats with the intent to terrorize another…if the person communicates either directly or indirectly, the threat to (a) commit any crime of violence with the intent to terrorize another…" 18 Pa. Cons. Stat. Ann. § 2706(a)(1). "[T]he harm that section 2706(a)(1) seeks to prevent is not the 'crime of violence,' but rather the consequences of the threat—i.e., 'the psychological distress that follows from an invasion of another's sense of personal security.'" *Javier v. Att'y Gen.*, 826 F.3d 127, 131 (3d Cir. 2016) (quoting *Commonwealth v. Tizer*, 454 Pa. Super. 1, 684 A.2d 597, 600 (Pa. Super. 1996)). "A person commits the crime of stalking when the person [] engages in a course of conduct or repeatedly communicates to another person under circumstances which demonstrate or communicate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person." 18 Pa. Cons. Stat. Ann. § 2709.1(a)(2). "[A] person is guilty of assault if he [] attempts by physical menace to put another in fear of imminent serious bodily injury…" 18 Pa. Cons. Stat. Ann. § 2701(a)(3).

Ginkel's affidavit of probable cause summarized the facts on which he believed probable cause existed to charge Voorhis with each of the above offenses:

> [Ginkel] was assigned to conduct a follow up investigation 10/25/2021, on an incident reported as "Terroristic Threats" which occurred on 10/21/2021 at the intersection of West 32nd and Pittsburgh Ave. Your Affiant was provided with an incident report documented by Ptlm. D. Rounds of the Erie Police Department, Patrol Division. The victim was identified as Laura Logue. Logue was reportedly driving her vehicle south on Pittsburgh Ave., approaching West 29th Street when a vehicle pulled out in front of

8

her, turning from West 29th Street and in the same direction she was traveling. Logue reportedly spiked her breaks and honked her horn and then continued south on Pittsburgh Avenue. As the victim approached the intersection of West 32nd and Pittsburgh Ave., the driver exited his vehicle and walked back to the victim, seated in her vehicle. As the driver approached her vehicle, he began yelling at her, calling her a "Stupid Bitch" and threatened to "Fuck (her) Up" and "Fucking Kill (her)" while repeatedly putting his hands in his pockets and pulling them out again. The driver eventually walked back to his vehicle, turning west bound onto West 32nd Street, in the same direction as the victim. The victim arrived at her destination and the driver of the silver vehicle then continued to drive by the residence, pointing and yelling "Fuck You".

Logue described the driver as approximately 5'10" tall, white male with long dark hair and a slight mustache. Prior to pulling away from the intersection, Logue was able to take a picture of the suspect vehicle and license plate. Logue provided this information to the reporting officer. Ptlm. Rounds supplied the report with this registration and the owner information and listed the owner as a suspect. The owner was identified as Jonathan Zachary Voorhis of 3103 Atlantic who owned the 2000 Silver Volvo Sedan bearing PA Registration "L5N4776". The description of the driver, matched the details provided for Voorhis on his driver's license, attached to the registration of the vehicle.

On 10/26/21, I met with Laura Logue for a recorded statement. This statement began at 1059 hours and was recorded by department issued body camera. During the statement, Laura confirmed the information she supplied to Ptlm. Rounds which she detailed once again. Laura advised that her 71-year-old mother, Luz Medina was also in the vehicle, seated in the front passenger seat, Luz, however, is in poor health and does not speak English. Laura explained that she was traveling south on Pittsburgh Ave. in her red Mitsubishi Mirage. Just after going under the bridge (Rt. 20 Just West of I-79), she encountered the suspect silver sedan as it turned out in front of her at what she believed to be West 29th Street. Laura demonstrated with items on the desk in front of her how close they were to contact or collision as a very short distance. Laura detailed the suspect description as White male, in his 30'S, long black hair, maybe had a mustache, wearing glasses, black t-shirt, blue jeans and a black belt. This male threatened to "fuck her up", "fucking kill her", "fuck up" whoever she was calling as Laura had her phone to call 911. Laura stated that the male had his hand on her window and indicated that he was tall as he needed to bend over at the car to yell at her through the glass. Laura stated that as the male made the repetitive threats to

9

do so, he continued to put his hands in his pockets. Laura was in `fear for her safety and her mothers. Laura detailed that after the altercation, the suspect reentered his vehicle and they both made their intended left turns. Laura's final stop in the 1900 block of West 32nd Street and after arriving there, she viewed the suspect drive by several more times. Each time, the suspect would yell expletives and one time she viewed him stick his middle finger up at the house. Laura has chosen not to drive her vehicle since the incident due to being fearful of further retaliation.

On 10/25/2021, Your Affiant reviewed surveillance video from Bello's Deli at 2176 West 32nd Street which is on the north east corner of the intersection of West 32nd and Pittsburgh Ave. Bello's had two exterior camera angles which show Pittsburgh Avenue. One angle faces northwest from the store and another which shows the majority of the intersection of West 32nd and Pittsburgh, except for the stopped or approaching traffic just north of the intersection. At approximately 1124 hours, surveillance shows the silver Volvo as it approaches the intersection from the north and then also as it stopped at West 32nd Street. A red Mitsubishi car or small SUV can be viewed traveling south just behind the silver Volvo. The driver of the silver Volvo sedan exits his car and walks toward the rear of the vehicle. No other actions can be viewed from these cameras due to their angles.

On 11/1/2021, Your Affiant reviewed surveillance video from Valerio's Italian Restaurant at 2179 West 32nd Street which is the southeast corner of West 32nd and Pittsburgh Avenue. Upon review of the video, it does show a northwest view of the intersection and does clearly show both the suspect and victim vehicle. It also shows the suspect and by current description appearing to be Jonathan Voorhis, exit the silver Volvo and approach the victim vehicle. The angle is from the rear of Voorhis and does not have audio. The video does corroborate the victims' statement.

On 10/26/2021, Your Affiant confirmed with the Pennsylvania State Parole, Erie office, that Voorhis is currently under the supervision of Agent Beth Servidio. On 11/6/2021, Agent Servidio viewed the surveillance video from Valerio's Italian Restaurant. Agent Servidio confirmed the appearance of Voorhis on the video by his hair, size, mannerisms and gait as he moved to and from his and the victim's vehicle. Based upon the information set forth within this criminal complaint, it is requested that the Defendant, Jonathan Zachary Voorhis be brought before the court to answer to these offenses.

*Id.*, pp. 6-8.

10

The facts stated in the affidavit of probable cause support each element of the offenses charged in the criminal complaint. As for the terroristic threats charge, Logue related in her statement that Voorhis repeatedly and directly threatened to commit a crime of violence against her — a physical assault upon her. The nature of the threat and the menacing circumstances under which it was communicated support a reasonable belief that Voorhis delivered it with an intent to terrorize Logue. As for the stalking charge, Logue described a course of conduct and repeated statements to Logue that, under circumstances, demonstrated or communicated an intent to place her in reasonable fear of bodily injury or to cause her substantial emotional distress. Finally, as to the simple assault charge, the physical conduct of Voorhis described by Logue and shown on the surveillance videos support a reasonable belief that Voorhis physically menaced Logue. This conduct, coupled with Voorhis' threats to harm or even kill Logue, fully support a reasonable belief that Voorhis acted with the intent to place Logue in fear of imminent serious bodily injury.

The magisterial district judge who reviewed the affidavit of probable cause agreed that it supported the charges presented in the criminal complaint. But this does not end the inquiry because an arrest warrant issued by a judicial officer "does not, in itself, shelter an officer from liability for false arrest." *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (citing *Sherwood*, 113 F.3d at 399). "Rather, a plaintiff may succeed in a § 1983 action for false arrest made pursuant to a warrant if the plaintiff shows, by a preponderance of the evidence: (1) that the police officer 'knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant'; and (2) that 'such statements or omissions are material, or necessary, to the finding of probable cause.'" *Wilson*, 212 F.3d at 786-87. Thus, when an arrest is based on a valid warrant, courts conduct a two-pronged analysis to

determine whether probable cause existed. *See Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017). They ask, "first, whether the officers, with at least a reckless disregard for the truth, made false statements or omissions that created a falsehood in applying for the warrant, and second, whether those assertions or omissions were material, or necessary, to the finding of probable cause." *Id.* (citing *Wilson*, 212 F.3d at 786–87 (internal quotation marks and alteration omitted)).

The Court has compared the factual statements in Ginkel's affidavit of probable cause with the recorded statement of Logue and the two surveillance videos on which Ginkel relied. His factual summary is complete and accurate in all material respects. It neither misstates nor omits any material information from the investigation. While Voohris disputes portions of Logue's version of their verbal exchange and argues for a less threatening interpretation of his physical conduct, this does not negate that the evidence and information known to Ginkel fully supported each of the charges presented by Ginkel and approved by the state court judge.

Statements from an eyewitness or victim are "typically sufficient to establish probable cause in the absence of '[i]ndependent exculpatory evidence or substantial evidence of [a] witness's own unreliability that outweigh[s]' the probable cause that otherwise exists." *Cooper v. City of Philadelphia*, 2016 WL 210459, at *1 (3d Cir. Jan. 19, 2016). *See also Burton v. Ziegler*, 2024 WL 1346674, at *5 (W.D. Pa. Mar. 29, 2024); *Pinkney*, 648 F. Supp. 3d at 635. Police officers can "generally assume that victims are credible, because their motive is ostensibly concern for their or others' safety" and because "victims are presumed to have sufficient knowledge, given that the crime happened to them." *Collick v. William Paterson Univ.*, 2021 WL 2374388, at *7 (D.N.J. June 10, 2021) (citing *Easton v. City of Boulder*, 776 F.2d 1441, 1449–50 (10th Cir. 1985). Because the standard for probable cause is relatively low, and the evaluation of a victim's statement is typically addressed in proceedings following an arrest, the reliability and foundational

12

basis of a victim's statement are usually adequate to establish probable cause. *Wilson*, 212 F.3d at 793–95 (Garth, J., concurring).

Voorhis' Complaint does not allege that Ginkel knowingly or deliberately misrepresented or omitted facts in his affidavit of probable cause. Instead, he offers a paragraph-by-paragraph reinterpretation of Ginkel's factual summary. For example, he claims that the video evidence shows him "walking toward [the victim] rather calm as opposed to a violent or tumultuous manner." ECF No. 5, p. 7. But Ginkel's affidavit never characterized Voorhis in this way. Ginkel's affidavit only noted that the videos showed Voorhis exiting his vehicle and approaching Logue's vehicle. He quibbles with Ginkel's use of "eventually" as misleading based on his calculation of his encounter with Logue having lasted only "six to eight seconds." *Id.* p. 8. He disagrees with the timeframe during which the victim took the picture of his license plate, but he does not disagree that she did so. *Id.* Voorhis alleges that Ginkel failed to preserve the video of his interview with Logue when, in fact, he did so, and Voorhis was provided a copy of it. *Id.* Voorhis' arguments for a benign interpretation of his conduct are not independent exculpatory evidence, and nothing presented to Ginkel supported a belief that Logue was not credible. Similarly, Voorhis' attempts to identify immaterial discrepancies between the video recordings and the words Ginkel used to describe their content do not negate that they show him stopping his vehicle at an intersection, exiting his vehicle, approaching Logue's vehicle, and engaging in a verbal exchange with her. Coupled with the information conveyed by Logue in her interview, the totality of circumstances known to Ginkel at the time supported probable cause for each of the charges against Voorhis and his subsequent arrest. *See Anderson v. Mesure*, 394 Fed. Appx. 848, 850 (3d Cir. 2010) (affirming district court's dismissal of malicious prosecution claim because

13

probable cause existed to initiate criminal proceedings where officer reviewed video surveillance recordings and statements from witnesses).

V.    Conclusion

Detective Ginkel's motion to dismiss will be GRANTED, and Voorhis' complaint will be dismissed with prejudice as his Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims fail as a matter of law based on the existence of probable cause. *See, e.g., Milligan v. Jacob*, 2019 WL 3470801, at *5 (W.D. Pa. July 8, 2019), *report and recommendation adopted*, 2019 WL 3460136 (W.D. Pa. July 31, 2019), *aff'd*, 826 Fed. Appx. 256 (3d Cir. 2020); *White v. Pennsylvania*, 2024 WL 915558, at *2 (M.D. Pa. Mar. 4, 2024). Leave to amend will be denied because amendment would be futile.

An order will follow.

DATED this 23rd day of September, 2024.

BY THE COURT:

_____
RICHARD A. LANZILLO
CHIEF UNITED STATES MAGISTRATE JUDGE